Henderson Building and Loan Association v. Johnson, &c.

CASE 32—PETITION EQUITY—FEBRUARY 2.

# Henderson Building and Loan Association v. Johnson, &c.

APPEAL FROM HENDERSON CIRCUIT COURT.

BUILDING AND LOAN ASSOCIATIONS—USURY.—The provision in the charter of a building and loan association that "no dues, premiums, interest or fines that may accrue to the association in accordance with its charter, shall be deemed usurious, and the same be collected as other debts," is partial legislation, and, therefore, unconstitutional, in so far as it authorizes the recovery of more than the legal rate of interest upon money loaned.

In this action by appellant (the charter of which contains such a provision) against appellee, one of its members, to recover money lent, it is entitled to recover only the amount lent with the legal rate of interest, and not the amount authorized by its charter in the way of premiums, fines, etc., which would amount to many times the legal rate of interest.

MONTGOMERY MERRITT FOR APPELLANT.

1. Section 8 of appellant's charter is not in violation of any provision of the Constitution of the State. (Endlich on Building Asso., secs. 18, 337, 101, 117, 176, 329, 134, 92, 371; Patterson v. W. B. & L. Ass'ns., 14 Lea (Tenn.) 686-690; McLaughlin v. C. C. & L. Ass'ns, 62 Ind., 264; Forest City B. & L. Asso. v. Galligher, 25 Ohio, 212; Merrill, &c., v. McIntyre, 13 Gray, 157; Robertson v. A. N. Ass'ns, 10 Md., 397; Albany B. & L. Asso. v. Patterson, 63 Ga., 373; Clarksville B. & L. Asso. v. Stephens, 26 N. J., 351; H., B. & L. Asso. v. Blackburn, Ind., 6 C. L. J., 466; C. M. L. Ass'ns v. Nester, 25 Barb., 263; 22 Gratt., 233, 22 Kan., 624; Pabst. v. E. B. Ass'n, 1 McArthur, 385; Barker v. M. R. F. Asso., 7 Allen, 100; Herber v. B. & L. Ass'n, 11 Bush, 286-300; Commonwealth v. Whipps, 80 Ky., 270.)

The case of Gordon v. W. B. & L. Asso., 12 Bush, 110 distinguished.

2. If there is a doubt only as to the constitutionality of the charter, it must be sustained. (Ogden v. Sanders, 12 Wheat, 270; State v. Reid, 1 Ala., 612; Sullivan, &c., v. Berry Adm'r, &c., 7 Ky. Law Rep., 407.)

JOHN YOUNG BROWN FOR APPELLEES.

The transaction between appellant and appellees, was a borrowing and lending of money at a usurious rate of interest; and the provi-

sion of appellant's charter upon which it relies as authorizing the contract, confers a special privilege, and is, therefore, unconstitutional. (Gordon v. Winchester Building Asso., 12 Bush, 113; Ky. Trust Co. v. Lewis, 6 Ky. Law Rep., 549; Herbert v. Kenton Building Asso., 11 Bush, 303; Monticello Mutual Building and Homestead Asso., v. Smythe (Ill.,) The Reporter, vol. 9, p. 714; Building Asso. v. Wilcox, 24 Conn., 147; 41 Md., 409; Mills v. Loan Asso., 175 N. C., 292; Building Asso. v. Gallagher, 25 Ohio St., 208; 45 Md., 546; 58 Md., 569; 31 Ohio St., 517; 55 Iowa, 424; 48 Iowa, 385.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The question presented in this case involves the validity of section 8 of the appellant's charter, in so far as it provides that "no dues, premiums, interest or fines that may accrue to the appellant in accordance with its charter, shall be deemed usurious, and the same may be collected as other debts, etc." The appellee, Thos. L. Johnson, subscribed for nine shares of stock in the Henderson Building Association, of one hundred dollars each, to be paid for in weekly installments of twenty-five cents on each share. He discounted the shares to the Association at and for the sum of six hundred and seventy-five dollars. He was also to pay fifty cents per month on each share as interest installments; and in case he failed to pay his periodical dues for the period of three months, the association had the right to forfeit his shares of stock, and collect at once the amount of money obtained from the Association. The appellee executed on the 25th of August, 1884, a mortgage on his house and lot in Henderson, to secure the payment of six hundred and seventy-five dollars, the money then obtained, and failing to pay his dues for three months, this action was instituted to foreclose the mortgage. It is alleged in the petition, and the account made out in accordance

with the charter and by-laws of the association shows, that of date September 16, 1887, he owed the Association the sum of six hundred and seventy-nine dollars and ninety-seven cents on this loan of money, or as appellent alleges, by reason of this partnership of which the appellee was a member. The appellee only received six hundred and seven dollars and forty cents in money, as by the rules of the association he was entitled to the benefit of the earnings from the —— day of March, 1884, although he did not become a member until August, 1884. The attorneys' fees for examining title and clerk's fees had to be, and were, deducted from the amount of money received by him.

The appellee, in defense to the action, alleges that this was a simple loaning and borrowing of money at a usurious rate of interest; and that although sanctioned by the Legislature, it was such partial and favored legislation as violated the fundamental law of the State; and the chancellor below so holding, gave the appellant its debt with legal interest only, of which it now complains.

It is insisted that the object of such associations is to enable the mechanic and laborer for wages to acquire a home, or secure one for the benefit of his family, by the payment in weekly and monthly installments of twenty-five and fifty cents; and that no other company or individual would likely hold out such inducements to those who are unable to furnish personal security for the performance of their obligations. Counsel for the appellant has produced many authorities from courts of last resort, and such as are entitled to great weight, sustaining the powers conferred by appellant's

charter on like corporations, basing their conclusions, some of them at least, on the fact that the actual transaction between the member and the association is not made upon any usurious consideration. Patterson v. Workingmen's Building Association, 14 Lea, 677 ; Merrill v. McIntyre, 13 Gray, 157.)

Experience may demonstrate the necessity for such organizations, and the peculiar benefits to be derived, by the laboring classes, from the liberal provisions contained in their charters, but the facts of this case are by no means convincing that either benevolence or charity constitute the basis of this association. The members who abstain from bidding the enormous premiums for the loan of money, must necessarily profit by the investment, but those who are so unfortunate as to become borrowers, and required to pay the interest exacted in this case, must ordinarily forfeit their stock, with the homes they have mortgaged and sold, and the proceeds applied to the benefit of those who act from motives of gain, and not from the love of mankind.

The appellee in this case owned no real estate but that embraced by the mortgage. He obtained this loan of six hundred and seventy-five dollars on the 25th of August, 1884, to enable him to pay a debt of six hundred dollars to a creditor who was pressing him for payment. From the time of the loan in August, 1884, up to the 1st of January, 1886, he had paid the association, at various times, in the way of dues and interest, the sum of two hundred and ninety-seven dollars and eighty-five cents ; and on the 14th of July, 1888, when the report of the commissioner

was made by which the appellant was only allowed the legal rate of interest on the loan, and the appellee credited by what he had paid, the latter owed the association four hundred and eighty-two dollars and forty-six cents, to satisfy which the chancellor ordered the property mortgaged to be sold.

The appellant complains and says that following the articles of association, the appellee would be indebted by way of discount, dues, interest and fines unpaid, in the sum of one thousand one hundred and thirty-eight dollars and fifty-two cents, subject to a credit of four hundred and fifty-nine dollars and twenty five cents, the amount of dues, etc. that should have been paid by the appellee, with which he stands charged, leaving a balance still due the association of six hundred and seventy-nine dollars and twenty-seven cents, as of the date of the commissioner's report. This result is reached by charging the appellee with the premium agreed to be paid on the money loaned for the time the loan had been made, which was one hundred and twenty-two dollars and seventy-two cents. This sum added to the dues, fines and interest, which amounted to four hundred and sixteen dollars and twenty-five cents, makes five hundred and thirty-eight dollars and ninety-three cents that defendant had paid or was bound to pay by the law of the appellant and the regulations of its order, leaving appellee still in debt in the sum of six hundred and seventy-nine dollars and twenty-seven cents.

Calculating this debt and its interest, and the claim of the association against the appellee in the way of premiums, fines, etc., as authorized and required by

the charter, and the appellee would be compelled to pay for the loan of six hundred and seventy-five dollars, from the 25th of August, 1884, until the 1st of January, 1888, a period of three years, four months and six days, five hundred and thirty-eight dollars and ninety-three cents, leaving him still in debt six hundred and seventy-nine dollars and twenty-seven cents.

The debt borrowed was secured by a mortgage on real estate, and we are inclined to adjudge that the appellee could have had no difficulty in obtaining such a loan from either a natural or artificial person with money to loan, especially upon a mortgage lien, with a law protecting the lender against any reclamation of usury by the debtor; nor will it be pretended that such special previleges could be conferred on an individual or corporation under our Constitution, and at the same time deny to others a like privilege. The legislature has suspended the general law in regard to usury for the benefit of the appellant, seemingly to promote the benevolent objects in view. The profit made does not ultimately benefit all the stockholders. Those who can live without borrowing from the association, and whose stock is not liable to be forfeited for the non-payment of dues, will ultimately realize the large profits resulting from such usurious loans at the expense of those who have paid from twenty to fifty per cent. for the use of the money. The fact that the money is loaned by the corporation to one of its members, can make no difference. The entire transaction is against the letter and spirit of the statute against usury. The charter of appellant is delusive. It proposes to practice benevolence, and at the same

time exacts the most exorbitant rate of interest. The borrower is made the victim of the delusion, and instead of being protected by the corporation, is made penniless by reason of its usurious exactions.

It is certain that those who fail to borrow prosper under the workings of this association, but they do so on the needs and misfortunes of their fellow members.

A loan to members at the legal rate of interest, with reasonable dues for the maintenance of the organization, could not be held usurious, but such power as is conferred on the corporation in this case, or upon its managers in the loan of its money, evidenced by the transaction in question, divests the appellant of its benevolent character, and converts it into an organization, under the forms of law, for the purpose of filling its treasury by imposing oppressive burdens on its members, who have been solicited to become the objects of its benevolence.

This court, in the case of Herbert v. The Kenton Building Association of Covington 11 Bush, 296, adjudged such a transaction to be usurious. See also Burlington Mutual Loan Association v. Heider, 55 Iowa, 424; Association v. Wilcox, 24 Conn., 147; Williar v. Baltimore Butchers' Loan Asso., 45 Md., 546; Forest City Loan Association v. Gallagher, 25 Ohio State, 208; Association v. Blackburn, 48 Iowa, 385. In addition to these authorities, in the case of Gordon v. The Winchester Building Association, reported in 12 Bush, 110, it was held that the section of appellees charter in that case, investing it with the power to charge a greater rate of interest than was allowed by the general law of the State, was un-

constitutional, and whether regarded as an exclusive privilege or partial legislation, it was in violation of the fundamental law. In that case it is true the borrower was not a member of the Association, but the power was given by the fifth section of its charter to loan money " *at such rates of interest as might be agreed on by the parties, preference being given in all cases to the members of the association.*" The object of that organization was to enable its members to acquire houses and other property, and if the benevolent object in view justified the Legislature in permitting its members to borrow money of the corporation at a usurious rate of interest, there is no reason why, in order to accomplish such a purpose, it should not be authorized to make the same character of loans to those not members.

The power given a natural person to offer his money at auction for loan to the highest bidder, making valid by legislative enactment the agreement to pay any amount of interest agreed on, would be deemed usury under the general law, and the repeal of the usury law as to him, however laudable the motive, would be open to constitutional objection. There is no difference in the exercise of such powers by a corporation and an individual. If invalid as to the one it is equally so as to the other, and no such special privileges can be conferred upon either under our Constitution. The Supreme Court of Illinois, in a well considered case, held that when a sum of money, in addition to the interest allowed by law, is bid for a loan by one of its members from the corporation, and included in the note, the transaction is usurious, and

a provision in the charter exempting the same from the operation of the usury law of that State was held to be unconstitutional. (Monticello Loan and Homestead Association v. Smythe, 9 Reporter, 714.)

We concur in the judgment below, holding that all the appellant was entitled to recover was the money loaned with the legal rate of interest.

Judgment affirmed.